# EXHIBIT A

Declaration of Plaintiff Curtis McDonald

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CURTIS MCDONALD, individually and on behalf of a class of similarly situated individuals, | ) ) ) |
| | ) Case No. 17-cv-8145 |
| Plaintiff, | ) ) ) Hon. Robert M. Dow |
| v. | ) ) Hon. Magistrate M. David Weisman |
| ABM INDUSTRIES INCORPORATED, a Delaware corporation; ABM AVIATION, INC., a Georgia corporation, | ) ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF CURTIS MCDONALD

I, Curtis McDonald, pursuant to 28 U.S.C. § 1746, hereby state that I am fully competent to make this Declaration, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and that I would testify to all such matters if called as a witness in this matter.

1. I am the named Plaintiff in this litigation, and I make this Declaration in support of my Motion for Class Certification, as well as my Motion for Summary Judgment. I am aware of my responsibility to the Class members and am committed to acting in their best interests throughout this litigation.

2. I am currently employed by Defendants, ABM Industries Incorporated ("ABMI") and ABM Aviation, Inc. ("ABM"), the named Defendants in this litigation (together, "Defendants"). I have been employed by Defendants as a skycap and have worked at an Illinois facility managed by Defendants during the relevant period.

3. As part of the conditions of my employment, Defendants required me to have my fingerprints scanned, collected and stored in order for the future use of Defendants' and/or their

agents to track my time. Defendants required at least dozens, if not all, of my co-workers to participate in their biometric time-keeping program.

4. As a condition of my employment, Defendants required me to scan my fingerprints into a device each and every time I needed to "clock-in" or "clock-out." Such device appears to have remained the same at all times.

5. Prior to capturing, collecting, and storing my fingerprints for use with their biometric time-keeping systems, Defendants did not provide me with any written documentation regarding their biometric program disclosures, destruction policies, third-party transmittal policies, or otherwise outlining any information whatsoever concerning their biometric program, including the existence of such biometric program.

6. Prior to retaining an attorney and filing a lawsuit against Defendants in October 2017, Defendants never provided me with any written documentation regarding their biometric program disclosures, destruction policies, third-party transmittal policies, or otherwise outlining any information whatsoever concerning their biometric program, including the existence of such biometric program.

7. On or about December 7, 2017, I received a memorandum from Defendants advising me that in order to be eligible for interviews and opportunities with a vendor taking over a portion of Defendants' business, I would need to remain in "good standing" with Defendants.

8. The first time I ever received any written documentation from Defendants concerning my rights pertaining to their biometric timekeeping program was when ABMI distributed a written document entitled "ABM Biometric Information Privacy Policy" ("Biometric Policy") to me and other employees on or about January 23, 2018. Defendants caused the

Biometric Policy to be sent directly to me and not to my attorneys in this litigation even though I am a party known to be represented by counsel, whom I engaged at my own expense.

9. A true and accurate copy of the ABM Biometric Information Privacy Policy that I received is attached as Exhibit 1 to this Declaration.

10. As of today, I am currently unaware of the status of my biometric information in the possession of Defendants and/or their agents.

11. At no point prior to my receipt of the Biometric Policy on or about January 23, 2018, did Defendants provide me with any document seeking my written consent for the collection, use or transfer of my biometrics.

12. Had Defendants provided me the information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, I would have been able to make an informed decision regarding the circumstances of my employment, including whether to accept the offered rate of pay, whether to request concessions or other accommodations related to participation in Defendants' biometric program including whether to condition my employment on being provided with an alternative timekeeping program which did not require my biometrics.

13. Had Defendants provided me with all necessary and appropriate information about their biometric timekeeping program, including their biometric retention and destruction policies and any consent required thereto, prior to the commencement of this litigation, I would have at least sought additional compensation for providing my biometric information and for waiving my rights pertaining thereto arising under Illinois law.

14. Because Defendants failed to provide me with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and

any consent related thereto, prior to the commencement of this litigation, I was unable to make an informed decision concerning material facts of my employment, including whether the rate of pay and opportunity cost justify participating in Defendant's biometric program.

15. Because Defendants failed to provide me with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, I was unable to determine and ask the appropriate questions in evaluating whether the opportunity cost of employment by Defendants outweighed my privacy concerns associated with my biometrics.

16. Because Defendants failed to provide me with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, I accepted employment under circumstances where I was not provided with all lawfully required disclosures to make an informed decision concerning, among other things, my rate of pay.

17. I would not have accepted employment by Defendants at the rate of pay I did had I known that Defendants would require me to participate in a biometric timekeeping system that did not comply with the law. Indeed, I would have at least sought, as my lawsuit now demands, additional compensation to compensate me for the increased risk created by Defendants' unlawful timekeeping system to my biometric information. I furthermore believe that the unique identifying value of my biometric information has been diminished through its repeated transmittal by Defendant to third parties without my lawful consent.

18. I also suffered and continue to suffer from mental strain and anguish over the past unauthorized transmittal by Defendants of my unique and irreplaceable biometric information to third parties.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29, 2018 in McHenry County, Illinois

_____
Curtis McDonald

# EXHIBIT A-1

Defendants' Biometric Policy



## ABM BIOMETRIC INFORMATION PRIVACY POLICY

ABM Industries Incorporated and its subsidiary companies (collectively "ABM") use biometric technology in order to identify employees on ABM's electronic timekeeping systems (whether on a biometric time clock, a mobile app, an interactive voice system, or other electronic timekeeping device) and/or for building/facility security access. ABM has engaged certain third party electronic timekeeping vendors including EPay Systems, Kronos, and/or other electronic timekeeping vendors (the "Vendor") to administer ABM's timekeeping systems. In accordance with applicable federal, state, or local law or ordinance, ABM has instituted the following Biometric Information Privacy Policy:

**Biometric Identifier Defined:** "Biometric Identifier" means a retina or iris scan, fingerprint or voiceprint, or a scan of the employee's hand or face geometry.

**Biometric Information Defined:** "Biometric Information" means any information, regardless of how it is captured, converted, stored or shared, based on an individual's biometric identifier used to identify an individual.

**Biometric Identifier / Information Collection:** ABM and/or its Vendor utilize biometric technology for the purpose of identifying employees on its electronic timekeeping systems and/or for building/facility security access. As part of these systems, ABM and/or its Vendor collect and/or store employees' biometric information.

**Consent:** In order to use ABM's electronic timekeeping systems and/or have building/facility security access, employees will be asked to sign a consent form authorizing ABM and/or its Vendor to collect/capture employees' biometric identifiers and biometric information.

**Disclosure:** ABM and its Vendor will not sell, lease, trade, or otherwise profit from an employee's biometric identifier or biometric information. ABM will not authorize its Vendor to engage in such activity. Neither ABM nor its Vendor will disclose or disseminate an employee's biometric identifier or biometric information unless:

- The employee or the employee's legally authorized representative provides consent to such disclosure;

- The disclosure completes a financial transaction requested or authorized by the employee or the employee's legally authorized representative;

- The disclosure is required by state or federal law, or municipal ordinance; or

- The disclosure is required pursuant to a valid warrant or subpoena.

**Storage:** The processed biometric sample (a mathematical representation of the biometric – not the original biometric sample) is stored/registered in a database for later comparison during an authentication. The actual value stored in the database is binary encrypted data which can only be decrypted by ABM or its Vendor.

**Retention Schedule:** An employee's biometric information will be permanently deleted and destroyed from all systems within ninety (90) days after the termination of the employee's employment, unless a longer retention period is required by subpoena, warrant, court order or other legal requirement.



## ABM BIOMETRIC PRIVACY
## EMPLOYEE NOTICE AND CONSENT FORM

I understand that ABM Industries Incorporated and its subsidiary companies (collectively "ABM") use biometric technology in order to identify employees on ABM's electronic timekeeping systems (whether on a biometric time clock, a mobile app, an interactive voice system, or other electronic timekeeping device) and/or for building/facility security access. I further understand that ABM has engaged certain third party electronic timekeeping vendors including EPay Systems, Kronos, and/or other electronic timekeeping vendors to administer ABM's timekeeping systems. I understand that these systems used by ABM and its electronic timekeeping vendors are generally computer based systems that first capture some form of biometric information. The computer system then extracts unique data points known as "minutia" from the biometric information (e.g. fingerprint image, retina, facial scan, or voiceprint) and formulates a biometric template from that image (i.e. a mathematical representation of the minutia) which is then used to verify the employee's identity. **ABM's systems, and the systems of ABM's third party timekeeping vendors, do not store images of any minutia.**

I acknowledge that I have read and received the attached ABM Biometric Information Privacy Policy.

I consent to providing my biometric information for the purpose of identifying me on ABM's electronic timekeeping systems (whether administered by ABM or by its third party electronic timekeeping vendors) and/or for building/facility security access.

_____
Employee Signature

_____
Employee Name

_____
Employee ID

_____
Date