# EXHIBIT B

*Rosenbach v. Six Flags Entertainment Corp.*,
2017 IL App (2d) 170317 (December 21, 2017)

2017 IL App (2d) 170317
No. 2-17-0317
Opinion filed December 21, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| STACY ROSENBACH, as Mother and Next Friend of Alexander Rosenbach and on Behalf of All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CH-13 |
| SIX FLAGS ENTERTAINMENT CORPORATION and GREAT AMERICA LLC, | ) ) ) ) ) | Honorable Luis A. Berrones, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    This interlocutory appeal arises from the claim of plaintiff, Stacy Rosenbach, as mother and next friend of Alexander Rosenbach and on behalf of all others similarly situated, that defendants, Six Flags Entertainment Corporation (Six Flags) and Great America LLC (Great America), violated the Biometric Information Privacy Act (Act) when Alexander purchased a season pass for a Great America theme park and defendants fingerprinted him without properly obtaining written consent or disclosing their plan for the collection, storage, use, or destruction of his biometric identifiers or information. 740 ILCS 14/1 *et seq.* (West 2016). Plaintiff alleged

not that she or Alexander suffered any actual injury but that, had she known of defendants' conduct, she would not have allowed Alexander to purchase the pass. Section 20 of the Act provides a cause of action to any "person aggrieved by a violation of this Act." 740 ILCS 14/20 (West 2016). Arguing that a person who suffers no actual harm has not been "aggrieved," defendants moved to dismiss the complaint. The trial court denied the motion to dismiss but later certified under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) two questions relating to whether a "person aggrieved by a violation of [the] Act" must allege some actual harm. We find that a "person aggrieved" by such a violation must allege some actual harm.

¶ 2                     I. BACKGROUND

¶ 3                      A. The Act

¶ 4     The Illinois legislature passed the Act in 2008 to provide standards of conduct for private entities in connection with the collection and possession of biometric identifiers and biometric information. 740 ILCS 14/15 (West 2016). A "biometric identifier" is a retina or iris scan, fingerprint, voiceprint, or hand- or face-geometry scan. 740 ILCS 14/10 (West 2016). The Act requires private entities, like defendants, to develop written policies, made available to the public, establishing a retention schedule and guidelines for the destruction of biometric identifiers. See 740 ILCS 14/15(a) (West 2016). Private entities who collect or purchase biometric identifiers are required to first (1) inform subjects that the information is being collected or stored; (2) inform subjects of the purpose and length of term for which the information is being collected and stored; and (3) receive from subjects written consent to collect the information. 740 ILCS 14/15(b) (West 2016). Private entities are prohibited from selling the information and from disclosing the information without consent or other authorization. 740 ILCS 14/15(c), (d) (West 2016). The Act also requires "using the reasonable standard of

2017 IL App (2d) 170317

care within the private entity's industry" to store and protect the information. 740 ILCS 14/15(e) (West 2016).

¶ 5  Of relevance to this appeal is section 20, titled "Right of action," which provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20 (West 2016). The Act has a definition section, but there is no definition for the term "aggrieved" or "person aggrieved." See 740 ILCS 14/10 (West 2016).

¶ 6  B. Plaintiff's Complaint

¶ 7  Plaintiff's complaint alleged the following. Six Flags implements a biometric fingerprint-scanning and identification process for season-pass holders at Great America. Alexander and others were fingerprinted and had their biometric data collected, recorded, and stored as part of Six Flags' security process for entry into the Great America theme park in Gurnee, Illinois. When Alexander purchased his season pass, he went to the security checkpoint at the park and his thumb was scanned into the Six Flags "biometric data capture system." Then he went to the administrative building to obtain a season-pass card to use in conjunction with his thumbprint scan to gain access to the park.

¶ 8  Upon Alexander's return home, plaintiff asked him for a booklet or paperwork that accompanied the season pass, but she learned that there was none. Plaintiff alleged that neither she nor Alexander was informed in writing of the specific purpose and length of term for which Alexander's thumbprint would be collected, stored, and used and that neither she nor Alexander signed any written release regarding the thumbprint. Plaintiff alleged that she did not consent in writing to the collection, storage, use, sale, lease, dissemination, disclosure, redisclosure, or

- 3 -

2017 IL App (2d) 170317

trade of, or for Six Flags to otherwise profit from, Alexander's thumbprint "or associated biometric identifiers or information."

¶ 9   After Alexander obtained his season pass, he never returned to the park. Plaintiff alleged that "Six Flags retained [Alexander's] biometric identifiers and/or information, but did not obtain written consent to get it, has not publicly disclosed what was done with it or at relevant times any purposes for which the identifiers or information were collected, and has not disclosed for how long the identifiers or information were or will be kept."

¶ 10   In January 2016, plaintiff sued defendants for fingerprinting season-pass holders without properly obtaining written consent and without properly disclosing their plan for the collection, storage, use, or destruction of the biometric identifiers or information. Plaintiff alleged violations of the Act and unjust enrichment. Plaintiff alleged that she and the putative class were "entitled to the maximum applicable statutory or actual damages provided under [the Act]," which is $5000 per violation. 740 ILCS 14/20(2) (West 2016). Plaintiff alleged not that she or Alexander suffered any actual injury, but that, had she known of defendants' conduct, "she never would have purchased a season pass for her son."

¶ 11              C. Motion to Dismiss and Rule 308(a) Certification

¶ 12   Defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)), arguing that under the Act any right of action is limited to a "person aggrieved," which excludes plaintiff because she failed to allege any actual injury. Defendants also argued that plaintiff failed to state a claim for unjust enrichment. Following a hearing, the court denied the motion as to the claims under the Act but granted it with prejudice as to the unjust-enrichment claim.

2017 IL App (2d) 170317

¶ 13     Defendants filed a motion for a Rule 308(a) certification on July 22, 2016.   They argued that significant legal questions were raised by the order denying their motion to dismiss, mainly (1) whether an individual is "aggrieved" under the Act when he or she alleges that biometric information was collected without the disclosures and written consent required under the Act but does not allege that the collection caused an actual injury; (2) whether a purchase of a product constitutes an injury sufficient to make a person "aggrieved" under the Act if he or she otherwise received the benefit of the bargain; and (3) whether a plaintiff is entitled to liquidated damages under the Act if he or she cannot establish that he or she suffered an actual injury.

¶ 14     Defendants further argued that the appellate court had not yet interpreted the Act and its limitation of a right of action to a "person aggrieved," which presented issues of first impression and substantial grounds for differences of opinion.   Also, an appeal would materially advance the termination of the litigation.   The trial court denied defendants' motion for a Rule 308(a) certification on January 6, 2017.

¶ 15     Relying on rulings in several other cases under the Act, defendants filed a motion for reconsideration.   On April 7, 2017, the trial court granted the motion and, reformulating the questions previously raised by defendants, certified the following two questions for our review: (1) whether an individual is an aggrieved person under section 20 of the Act and may seek statutory liquidated damages authorized under section 20(1) of the Act (740 ILCS 14/20(1) (West 2016)) when the only injury he or she alleges is a violation of section 15(b) of the Act by a private entity that collected his or her biometric identifiers and/or biometric information without providing him or her the disclosures and obtaining the written consent required by section 15(b) of the Act and (2) whether an individual is an aggrieved person under section 20 of the Act and may seek injunctive relief authorized under section 20(4) of the Act (740 ILCS 14/20(4) (West 2016))

- 5 -

2017 IL App (2d) 170317

when the only injury he or she alleges is a violation of section 15(b) of the Act by a private entity that collected his or her biometric identifiers and/or biometric information without providing him or her the disclosures and obtaining the written consent required by section 15(b) of the Act.

¶ 16    Defendants timely filed an application for leave to appeal in this court, and we granted the application pursuant to Rule 308.

¶ 17                                II. ANALYSIS

¶ 18    The certified questions revolve around whether a party is "aggrieved," and thus may bring an action for liquidated damages or injunctive relief, when the only injury alleged is a violation of the notice and consent requirements of section 15(b) of the Act.  Defendants contend that the interpretation of "aggrieved" most consistent with the Act's language and purpose, and with interpretations of that term in other statutes and in other jurisdictions, is that it requires actual harm or adverse consequences.  Plaintiff opposes this and argues that a mere technical violation of the Act is sufficient to render a party "aggrieved."

¶ 19    Defendants' argument raises a question of statutory construction, which invokes well-settled principles.  Our primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the surest and most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself.  *People v. Chapman*, 2012 IL 111896, ¶ 23.  Where the language is clear and unambiguous, this court will apply the statute without further aids of statutory construction.  *Id*.  In determining the plain meaning of the statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in passing it.  *People v. Davis*, 199 Ill. 2d 130, 135 (2002). Statutes must be construed so that each word, clause, and sentence is given meaning, and not rendered superfluous.  *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007).

2017 IL App (2d) 170317

¶ 20    The Act does not define "aggrieved."  When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term.  *Chapman*, 2012 IL 111896, ¶ 24.  Black's Law Dictionary defines "aggrieved party" as "[a] party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment."  Black's Law Dictionary (10th ed. 2014).  Similarly, "aggrieved" is defined as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights."  *Id*.  Although plaintiff asserts that the dictionary definitions support her reading of the statute in that Alexander's right to privacy is a "personal right" or a "legal right" that has been "adversely affected," these definitions also suggest that there must be an actual injury, adverse effect, or harm in order for the person to be "aggrieved."[1]

¶ 21    In *McCollough v. Smarte Carte, Inc.*, No. 16-C-03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016), the plaintiff sought damages stemming from violations of the Act.  Citing the above definition of "aggrieved party," the district court held that, by alleging a technical violation of the Act, the plaintiff did not meet that definition, because she had not alleged any facts to show that her rights had been adversely affected by the violation.  *McCollough*, 2016 WL 4077108, at *4; see also *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 519-20 (S.D.N.Y. 2017) (finding the court's analysis in *McCollough* instructive).  While cases from lower federal courts are not binding, we may consider their analyses persuasive.  See *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 2015 IL (2d) 140589, ¶ 43.  Alleging only technical violations of the notice and consent provisions of the statute, as plaintiff did here, does not equate to alleging an adverse effect or harm.

---

[1] Plaintiff did not allege in her complaint any harm or injury to a privacy right.

¶ 22    In *Avudria v. McGlone Mortgage Co.*, 2011 WI App 95, 802 N.W.2d 524 (2011), the Court of Appeals of Wisconsin was confronted with an issue similar to the one here. In that case, the plaintiff alleged that the defendant, a licensed mortgage broker, failed to provide him with a consumer disclosure as required by a Wisconsin statute. The trial court entered summary judgment in favor of the defendant, finding that the plaintiff was not an "aggrieved" person pursuant to the statute governing private causes of action against mortgage brokers (Wis. Stat. Ann. § 224.80(2) (West 2010)). *Avudria*, 2011 WI App 95, ¶ 8. The *Avudria* court noted that its supreme court had held that the terms "aggrieved" and "injured" are nearly synonymous and that "aggrieve" means "to inflict injury upon," which requires a showing of some actual injury or harm. *Avudria*, 2011 WI App 95, ¶¶ 24-25 (quoting *Liebovich v. Minnesota Insurance Co.*, 2008 WI 75, ¶ 37, 751 N.W.2d 764); see also *AlohaCare v. Ito*, 271 P.3d 621, 637 (Haw. 2012) ("person aggrieved" appears to be essentially synonymous with person who has suffered "injury in fact" (internal quotation marks omitted). The *Avudria* court stated:

> "To read the statute as Avudria suggests, as a strict liability statute permitting a private cause of action for a mere technical violation of Wis. Stat. ch. 224, requires that the word 'aggrieved' be read out of the statute. 'We avoid a construction of a statute that results in words being superfluous.' (Citation omitted.) The legislature qualified the private-cause-of-action provision with the phrase 'person who is aggrieved' for a reason. If the legislature had intended to permit all borrowers to file suit for violations of ch. 224, regardless of whether the borrower was injured by the violation, it could have drafted the statute in a manner that omitted the word 'aggrieved'; the legislature could simply have said that a mortgage broker is liable for the statutorily-prescribed damages if

it fails to use the forms. Because the legislature included the word 'aggrieved,' we must interpret it to have meaning." *Avudria*, 2011 WI App 95, ¶ 26.

¶ 23 Likewise, if the Illinois legislature intended to allow for a private cause of action for every technical violation of the Act, it could have omitted the word "aggrieved" and stated that every violation was actionable. A determination that a technical violation of the statute is actionable would render the word "aggrieved" superfluous. Therefore, a plaintiff who alleges only a technical violation of the statute without alleging *some* injury or adverse effect is not an aggrieved person under section 20 of the Act.

¶ 24 Plaintiff cites the Uniform Commercial Code (UCC) (810 ILCS 5/2A-402(c) (West 2016)) and the Mortgage Act (765 ILCS 905/4 (West 2016)), asserting that they allow an "aggrieved" party a right of action without an actual injury. The provision of the UCC cited by plaintiff allows an "aggrieved party" to suspend performance after a party "repudiates a lease contract with respect to a performance not yet due under the lease contract, the loss of which performance will substantially impair the value of the lease contract." 810 ILCS 5/2A-402 (West 2016)). This statute unambiguously identifies a concrete harm, *i.e.*, the diminished value of the lease contract.

¶ 25 Likewise, the Mortgage Act allows a "party aggrieved" to recover $200 for a violation of section 2, which requires a party to release a mortgage and record its release under certain conditions. 765 ILCS 905/2 (West 2016). The failure to release and record creates a tangible harm, *i.e.*, a cloud on title. Also, section 4 of the Mortgage Act is a strict liability statute, which penalizes all parties who do not comply with section 2. 765 ILCS 905/4 (West 2016). See *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1150 (2004) (Mortgage Act "unambiguously gives a mortgagor a right to damages where the mortgagee does not comply").

- 9 -

2017 IL App (2d) 170317

On the other hand, the Act requires the plaintiff to prove that the defendant acted negligently or intentionally or recklessly. 740 ILCS 14/20(1), (2) (West 2016)).

¶ 26 In a footnote, plaintiff cites *Monroy v. Shutterfly, Inc.*, No. 16-C-10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), in which the court denied a motion to dismiss, holding, *inter alia*, that the Act does not require a party to allege actual damages. However, the court did not interpret the term "person aggrieved."

¶ 27 Defendants make an argument regarding substantial compliance with the Act, and plaintiff raises one that she did suffer an actual injury. Neither argument is relevant to this court's answering the certified questions, which is what we are limited to in this appeal. See *Hudkins v. Egan*, 364 Ill. App. 3d 587, 590 (2006) (recognizing that the scope of review "is ordinarily limited to the question certified" and that "[g]enerally, our jurisdiction is limited to considering the question certified and we cannot address issues outside that area").

¶ 28 The trial court certified two questions, one for each of two remedies contained in the Act: the first question is based on liquidated damages authorized under section 20(1), and the second is based on injunctive relief authorized under section 20(4). The court probably did so in light of Rottner v. Palm Beach Tan, Inc., No. 15-CH-16695 (Cir. Ct. Cook Co.), a case relied on by defendants, in which the circuit court allowed the case to go forward *only* for injunctive relief. We do not find this appropriate. In order for *any* of the remedies to come into play, the plaintiff must be "[a]ny person aggrieved by a violation of this Act." 740 ILCS 14/20 (West 2016). If a person alleges only a technical violation of the Act without alleging any injury or adverse effect, then he or she is not aggrieved and may not recover under any of the provisions in section 20. We note, however, that the injury or adverse effect need not be pecuniary.

¶ 29                                      III. CONCLUSION

2017 IL App (2d) 170317

¶ 30   Accordingly, we answer the trial court's certified questions in the negative.

¶ 31   Certified questions answered; cause remanded.