IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CURTIS MCDONALD, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>)<br>) Case No. 17-cv-8154 |
| *Plaintiff*, | )<br>) |
| v. | ) Hon. Robert M. Dow<br>) |
| ABM INDUSTRIES INCORPORATED, a Delaware corporation; ABM AVIATION, INC., a Georgia corporation, | ) Hon. Magistrate M. David Weisman<br>)<br>)<br>)<br>) |
| *Defendants*. | )<br>) |

**PLAINTIFF'S L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Curtis McDonald, by his undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby submits this Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment.

1. Plaintiff Curtis McDonald is currently employed by Defendants, ABM Industries Incorporated ("ABMI") and ABM Aviation, Inc. ("ABM") (collectively, "Defendants."). Plaintiff has been employed by Defendants as a skycap and has worked at an Illinois facility managed by Defendants at all times relevant to this litigation. (*See* Declaration of Curtis McDonald, a true and accurate copy of which is attached hereto as Exhibit A, ¶ 2).

2. As a way to keep track of their employees' time on the job, Defendants instituted a biometric timekeeping system that identified employees based on their fingerprints. (Ex. A, ¶¶ 3-4).

3. The biometric timekeeping system utilized by Defendants has not materially changed since it was implemented. (Ex. A, ¶ 4).

4. As a condition of his employment with Defendants, Plaintiff has been required to scan his fingerprints into Defendants' biometric timekeeping system as a way to "clock-in" or "clock-out" of work. (Ex. A, ¶ 4).

5. Defendants also require their other employees, Plaintiff's co-workers, to also scan their fingerprints into Defendants' biometric timekeeping system. (Ex. A, ¶ 3).

6. Defendants' biometric timekeeping program collects and stores biometric information. (*See* "ABM Biometric Information Privacy Policy" ("Biometric Disclosures"), a true and accurate copy of which is attached to the Declaration of Curtis McDonald as <u>Exhibit A-1</u>).

7. Defendants' biometric timekeeping program uses Plaintiff's and their other employees' biometric information to verify employees' identity and to keep track of their time at work. (Ex. A-1).

8. Defendants' biometric timekeeping program collects and stores Plaintiff's and other employees' biometric information. (Ex. A-1).

9. Defendants' biometric timekeeping program disseminates the biometric information of Plaintiff and other employees to one or more third-party vendors, including Epay Systems and Kronos. (Ex. A-1).

10. On or about December 7, 2017, Plaintiff received a memorandum from Defendants advising him that, in order to be eligible for interviews and opportunities with a vendor taking over a portion of Defendants' business, he would need to remain in "good standing" with Defendants. (Ex. A, ¶ 7).

11. Defendants distributed their Biometric Disclosures to Plaintiff on or about January 23, 2018. (Ex. A, ¶ 8) (Ex. A-1).

12. Defendants also distributed the Biometric Disclosures to other employees at or around the same time that Defendants distributed the Biometric Disclosures to Plaintiff. (Ex. A, ¶ 8).

13. Defendants distributed the Biometric Disclosures to Plaintiff after this class action lawsuit was filed. (Ex. A, ¶ 6).

14. Defendants engage third-party vendors to administer their biometric timekeeping program. (Ex. A-1).

15. Defendants disseminate the biometric information and/or biometric identifiers or its employees, including Plaintiff, to its third-party vendors as part of Defendants' biometric timekeeping program. (Ex. A-1).

16. Plaintiff's receipt of the Biometric Disclosures in January 2018 was the first time Plaintiff ever received any written documentation from Defendants concerning Defendants' biometric timekeeping program and Plaintiff's rights relating thereto. (Ex. A, ¶ 8).

17. Prior to receiving the Biometric Disclosures in January 2018, Plaintiff was never provided by Defendants, or anyone on behalf of Defendants, with any written documentation regarding Defendants' biometric timekeeping program disclosures, destruction policies, third-party transmittal policies, or otherwise outlining any information whatsoever concerning Defendants' biometric timekeeping program, including the existence of such biometric program and what it entails. (Ex. A, ¶¶ 5-8, 11).

18. Prior to receiving the Biometric Disclosures in January 2018, Plaintiff was never asked by, or on behalf of, Defendants to provide any written consent for the collection or use of his biometrics as part of Defendants' biometric timekeeping program. (Ex. A, ¶¶ 5-8, 11).

19. Plaintiff has never provided any written consent to Defendants for the collection or use of his biometrics. (Ex. A, ¶¶ 5-8, 10).

20. Plaintiff has never been asked to provide, and has never provided, any consent or any type of release for the dissemination of his biometrics to any entity, including any third party or other entity that isn't one of the Defendants, such as Epay Systems or Kronos. (Ex. A, ¶¶ 5-8, 10).

21. Prior to Plaintiff's receipt of the Biometric Disclosures in January 2018, Defendants never disclosed to Plaintiff that his biometric information or biometric identifiers were being disseminated, or could be disseminated, to any entity other than Defendants, including any third-party vendors. (Ex. A, ¶¶ 5-8, 10).

22. Defendants caused the Biometric Policy to be sent directly to Plaintiff and not to his attorneys in this litigation, even though Plaintiff is a party known to be represented by counsel, whom he engaged at his own expense. (Ex. A, ¶ 8).

23. As of this filing, Plaintiff remains unaware of the status of his biometric information in the possession of Defendants and/or their agents or vendors. (Ex. A, ¶ 10).

24. Had Defendants provided Plaintiff with their Biometric Disclosures, or any information regarding their biometric timekeeping program required under BIPA, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, he would have been able to make an informed decision regarding the circumstances of his employment, including whether to accept the offered rate of pay, whether to request concessions or other accommodations related to participation in Defendants' biometric program including whether to condition his employment on being provided with an alternative timekeeping program that did not require his biometrics. (Ex. A, ¶ 12).

25. Had Defendants provided Plaintiff with their Biometric Disclosures, or any information about their biometric timekeeping program required under BIPA, including their biometric retention and destruction policies and any consent required thereto, prior to the commencement of this litigation, he would have at least sought additional compensation for providing his biometric information and for waiving his rights pertaining thereto arising under Illinois law. (Ex. A, ¶ 13).

26. Because Defendants failed to provide Plaintiff with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, he was unable to make an informed decision concerning material facts of his employment, including whether the rate of pay and opportunity cost justify participating in Defendants' biometric program. (Ex. A, ¶ 14).

27. Because Defendants failed to provide Plaintiff with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, he was unable to determine and ask the appropriate questions in evaluating whether the opportunity cost of employment by Defendants outweighed his privacy concerns associated with his biometrics. (Ex. A, ¶ 15).

28. Because Defendants failed to provide Plaintiff with any information regarding their biometric timekeeping program, including any biometric retention and destruction policies and any consent related thereto, prior to the commencement of this litigation, he accepted and/or continued employment under circumstances where he was not provided with all lawfully required disclosures to make an informed decision concerning, among other things, his rate of pay. (Ex. A, ¶ 16).

29. Plaintiff would not have accepted or continued employment by Defendants at the rate of pay he did had he known that Defendants would require him to participate in a biometric timekeeping system that did not comply with the law. Indeed, Plaintiff would have at least sought, as his lawsuit now demands, additional compensation to compensate him for the increased risk to his biometric information created by Defendants' unlawful timekeeping program. Plaintiff furthermore believes that the unique identifying value of his biometric information has been diminished through its repeated transmittal by Defendant to third parties without his lawful consent. (Ex. A, ¶ 17).

30. In addition to the economic harm and injury Plaintiff incurred due to his inability to make an informed decision concerning material facets of his employment, Plaintiff also suffered and continues to suffer from mental strain and anguish over the past unauthorized dissemination by Defendants of his unique and irreplaceable biometric identifiers to third parties and over the misuse, misappropriation, conversion and/or sale of his biometric information. (Ex. A, ¶ 18).

31. The Biometric Disclosures identify multiple third-party vendors involved in Defendants' biometric timekeeping program, including "EPay Systems, Kronos and/or other electronic timekeeping vendors." (Ex. A-1).

32. No vendor or any other entity other than Defendants is a signatory to the Biometric Disclosures. (Ex. A-1).

33. The Biometric Disclosures do not state whether Plaintiff's biometrics had been previously disseminated by Defendant to any other third-party vendors prior to January 2018, or whether Defendants' vendors had previously disseminated Plaintiff's biometrics to any other persons or entities prior to January 2018. (Ex. A-1).

34. In their Biometric Disclosures, Defendants define biometric identifiers as "retina or iris scan, fingerprint or voiceprint, or a scan of the employee's hand or face geometry," and biometric information as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." (Ex. A-1).

35. Defendants' Biometric Disclosures refers to both Defendants as a singular entity, "ABM." (Ex. A-1).

36. Defendants' Biometric Disclosures are marked with ABMI's corporate logo on each page. (Ex. A-1).

37. The Transportation Communications International Union ("TCIU") has sought redress on behalf of its members for Defendants' failure to comply with the BIPA and for Defendants' subsequent request that such individuals contractually agree to the dissemination of their biometric information to Defendants' third-party vendors.

Dated: February 26, 2018

Respectfully submitted,

CURTIS McDONALD, individually and on behalf of a class of similarly situated individuals,

By: /s/ Jad Sheikali
*One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
Jad Sheikali
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jsheikali@mcgpc.com

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 26, 2018, I caused the foregoing *Plaintiff's L.R. 56.1 Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

    /s/ Jad Sheikali